**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

Roberto Vigo,

Plaintiff,

v.

CeramTec North America, LLC,

Defendant.

Civil Action No. 6:26-CV-04399-DCC

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS**

Defendant CeramTec North America, LLC ("Defendant," "CTNA" or the "Company"), by and through its undersigned counsel, hereby submits its Answer to Plaintiff Roberto Vigo's ("Plaintiff") Complaint, and further asserts Counterclaims against Plaintiff. Unless otherwise specifically admitted herein, Defendant generally denies all of Plaintiff's allegations contained in the Complaint. Each numbered paragraph below corresponds to the same numbered paragraph of the Complaint.

Subject to and without waiving any of its affirmative and other defenses, Defendant answers the numbered paragraphs of Plaintiff's Complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Defendant admits the allegations of Paragraph 1 upon information and belief.

2. In response to the allegations of Paragraph 2, Defendant admits only that it is a Delaware limited liability company authorized to conduct business in South Carolina, and that Defendant maintains a facility located at One Technology Place, Laurens, South Carolina 29360.

3. The allegations of Paragraph 3 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant does not contest that this Court has personal jurisdiction over Defendant. Defendant also admits that it regularly conducts business in

Laurens County, South Carolina. Defendant denies the remaining allegations of Paragraph 3.

4. The allegations of Paragraph 4 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant does not contest that venue is proper in this Court. Defendant also admits that Plaintiff's Complaint contains allegations of acts and omissions occurring in Laurens County, South Carolina. Defendant denies the remaining allegations of Paragraph 4.

5. The allegations of Paragraph 5 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant does not contest this Court's subject matter jurisdiction.

## FACTUAL ALLEGATIONS

6. Defendant admits the allegations of Paragraph 6.

7. In response to the allegations of Paragraph 7, Defendant admits only that the referenced individuals were involved in issuing a letter to Plaintiff dated April 5, 2021, the terms of which document speak for themselves. Defendant denies that the April 5, 2021, letter is a binding contract between Plaintiff and Defendant and denies any remaining allegations of Paragraph 7.

8. Defendant denies the allegations of Paragraph 8.

9. In response to the allegations of Paragraph 9, Defendant admits only that the referenced April 5, 2021, letter makes reference to various compensation and benefits as alleged, and admits that Plaintiff's base salary was later increased to $284,350. Defendant denies that the April 5, 2021, letter is a binding contract between Plaintiff and Defendant and denies any remaining allegations of Paragraph 9.

10. In response to the allegations of Paragraph 10, Defendant admits only that the

referenced April 5, 2021, letter contains the quoted language. Defendant denies that the April 5, 2021, letter is a binding contract between Plaintiff and Defendant and denies any remaining allegations of Paragraph 10.

11. Defendant denies the allegations of Paragraph 11.

12. Defendant admits the allegations of Paragraph 12.

13. In response to the allegations of Paragraph 13, Defendant admits only that Plaintiff was placed on administrative leave pending an internal audit by letter dated May 2, 2025, the terms of which document speak for themselves. Defendant denies any remaining allegations of Paragraph 13 inconsistent with the foregoing.

14. In response to the allegations of Paragraph 14, Defendant admits only that Dr. Saleh sent Plaintiff written notice of his removal from certain corporate positions on or about the date alleged, the terms of which document speak for themselves. Defendant denies any remaining allegations of Paragraph 14 inconsistent with the foregoing.

15. In response to the allegations of Paragraph 15, Defendant admits only that CTNA sent Plaintiff written notice of his termination for Cause on or about the date alleged, the terms of which document speak for themselves. Defendant denies any remaining allegations of Paragraph 15 inconsistent with the foregoing.

16. In response to the allegations of Paragraph 16, Defendant admits only that CTNA sent Plaintiff written notice of his termination for Cause on or about the date alleged, the terms of which document speak for themselves. Defendant denies any remaining allegations of Paragraph 16 inconsistent with the foregoing.

17. Defendant denies the allegations of Paragraph 17 as alleged.

18. Defendant denies the allegations of Paragraph 18.

19. In response to the allegations of Paragraph 19, Defendant admits only that it has not paid Plaintiff any "separation pay" or provided Plaintiff with "medical benefits at the executive rate" after his termination. Defendant denies any remaining allegations of Paragraph 19.

20. Defendant denies the allegations of Paragraph 20.

21. Defendant denies the allegations of Paragraph 21.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**

22. Responding to Paragraph 22, Defendant restates and reasserts each and every response provided above as if set forth herein verbatim.

23. Defendant denies the allegations of Paragraph 23.

24. Defendant denies the allegations of Paragraph 24.

25. In response to the allegations of Paragraph 25, Defendant admits only that it terminated Plaintiff for cause on or about the date alleged. Defendant denies the remaining allegations of Paragraph 25.

26. Defendant denies the allegations of Paragraph 26.

27. Defendant denies the allegations of Paragraph 27.

**FOR A SECOND CAUSE OF ACTION**
**(Violation of the South Carolina Payment of Wages Act)**

28. Responding to Paragraph 28, Defendant restates and reasserts each and every response provided above as if set forth herein verbatim.

29. The allegations of Paragraph 29 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant admits only that Plaintiff was, at certain relevant times, an employee of Defendant and that Defendant is an "employer" as defined in S.C. Code Ann. § 41-10-10(1).

30. The allegations of Paragraph 30 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 30.

31. The allegations of Paragraph 31 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 31.

32. The allegations of Paragraph 32 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 32.

33. The allegations of Paragraph 33 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 33.

**FOR A THIRD CAUSE OF ACTION**
**(Quantum Meruit/Unjust Enrichment)**

34. Responding to Paragraph 34 Defendant restates and reasserts each and every response provided above as if set forth herein verbatim.

35. In response to the allegations of Paragraph 35, Defendant admits only that Plaintiff has pled an equitable claim in the alternative, his entitlement to which is expressly denied.

36. In response to the allegations of Paragraph 36, Defendant admits only that Plaintiff was employed by Defendant for over 17 years and was more than fully compensated for any employment services he provided. Defendant denies any remaining allegations of Paragraph 36.

37. In response to the allegations of Paragraph 37, Defendant admits only that it was aware of Plaintiff’s employment and more than fully compensated Plaintiff for any employment services he provided. Defendant denies any remaining allegations of Paragraph 37.

38. Defendant denies the allegations of Paragraph 38.

39. Defendant denies the allegations of Paragraph 39.

## PRAYER FOR RELIEF

Defendant denies Plaintiff is entitled to any of the relief requested in his unnumbered "Prayer for Relief," including subparagraphs (a), (b), (c), (d), (e) and (f).

## AFFIRMATIVE AND OTHER DEFENSES

1. Plaintiff's Complaint fails to state any claim upon which relief may be granted against Defendant and should therefore be dismissed in its entirety.

2. Plaintiff has failed to reasonably mitigate his damages, his entitlement to which is expressly denied.

3. Plaintiff's recovery for any alleged breach of contract is barred by Plaintiff's failure to satisfy one or more condition(s) precedent(s) to be entitled to recovery under the alleged agreement.

4. Defendant alleges that, to the extent Plaintiff claims Defendant had any obligation as to which full performance has not been rendered or excused, that obligation did not exist or was based upon acts that were void or otherwise extinguished.

5. Plaintiff is not entitled to treble damages, costs, or attorneys' fees because there is a bona fide, good faith dispute regarding whether he is owed any wages.

6. Any award of damages should be barred or limited to the extent that the relief demanded by Plaintiff is improper, barred in whole or in part by the doctrine of after-acquired evidence, is inappropriate, exceeds the scope of permissible damages and remedies, and/or otherwise is not available under the laws upon which his claims rest.

7. Plaintiff's claims may be barred in whole or in part by the doctrines of waiver;

unclean hands; estoppel by reason of his own conduct and actions, including acts of commission and omission; release; laches; accord or satisfaction.

8. Plaintiff's claims may be barred in whole or in part by the applicable statute of limitations.

9. To the extent Defendant is found to have violated any statute as alleged, the fact of which is expressly denied, Plaintiff is not entitled to recover punitive damages or attorneys' fees because Defendant did not commit any alleged willful, oppressive, fraudulent, or malicious acts, or act with reckless indifference to Plaintiff's rights.

10. Any award of damages to Plaintiff must be offset by sums received by Plaintiff from Defendant, by amounts Plaintiff may receive from third parties, or amounts owed by Plaintiff to Defendant.

11. Some or all of Plaintiff's claims are barred by the doctrine of at-will employment, given that Plaintiff was an at-will employee, and the terms of his employment were subject to change at any time.

12. Defendant is entitled to a credit or set-off for any compensation paid to Plaintiff (or taken by Plaintiff) to which he was not otherwise entitled.

13. Some or all of Plaintiff's claims may be barred by his breaches of the duty of loyalty, fiduciary duty, or fraud.

14. Plaintiff's recovery for any alleged breach of contract is barred by the affirmative defenses of fraud, misrepresentation, mistake, and/or fraud in the inducement.

15. Plaintiff's recovery for any alleged breach of contract is barred, in whole or in part, pursuant to the express terms of the alleged agreement(s) or contract(s), via Plaintiff's breaches and prior breaches of the alleged agreement(s) or contract(s), lack of specificity, lack of

consideration, lack of authority, or novation.

16. Plaintiff's claims are barred due to the lack of proximate cause between Plaintiff's alleged damages and the actions/inactions of Defendant.

17. To the extent that certain supervisors, managers, employees, and/or agents of Defendant may have engaged in inappropriate conduct or unlawful action, the fact of which is expressly denied, such conduct is outside the course and scope of their employment, authority, or agency, was in direct contravention of Defendant's policies, and occurred without Defendant's consent or ratification. Accordingly, Defendant cannot be vicariously liable for such actions or conduct.

18. To the extent that Defendant discovers any additional facts which would have warranted any adverse action against Plaintiff, Plaintiff's claims and/or recovery may be barred in whole or in part because of after acquired evidence of wrongful conduct.

19. Plaintiff's claims may be barred in whole or in part by acts, omissions, or events caused not by Defendant, but instead by Plaintiff and/or third parties.

20. To the extent that Plaintiff seeks punitive damages, Defendant affirmatively pleads the following in regard to punitive damages:

(a) An award of punitive damages in this civil action would amount to a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the South Carolina Constitution;

(b) The criteria used for determining whether and in what amount punitive damages may be awarded are impermissible, vague, imprecise, and inconsistent, and therefore, violate the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the South Carolina Constitution;

(c) Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of North America, Inc. v. Gore*, 517

U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 408 (2003); and

(d) Defendant asserts the punitive damages cap articulated by S.C. Code Ann. § 15-32-530 as an affirmative defense.

21. Defendant submits Plaintiff's claims are utterly without merit and are unreasonable, frivolous and without foundation. Defendant therefore gives notice of its intent to seek the recovery of its reasonable costs and attorneys' fees pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. § 15-36-10.

22. Plaintiff's claims are barred, in whole or in part, because the purported severance provisions upon which he relies were not authorized, approved, or ratified by persons possessing actual authority to bind Defendant under Defendant's governing documents, corporate governance requirements, and approval framework.

23. Plaintiff's claims are barred, in whole or in part, because Plaintiff knew or reasonably should have known that the purported severance provisions exceeded the authority of the individuals who executed or approved them and therefore cannot establish actual or apparent authority as a basis for recovery.

24. Plaintiff's claims are barred because Defendant, CeramTec GmbH and/or CeramTec AcquiCo GmbH ("CeramTec AcquiCo") did not authorize or knowingly ratify the purported severance provisions upon which Plaintiff relies.

25. Plaintiff's claims are barred by his own fraud, fraudulent concealment, misrepresentations, and omissions concerning the existence, origin, approval, authority, validity, and enforceability of the compensation and severance arrangements on which his claims are based.

26. Plaintiff's claims are barred, in whole or in part, because Plaintiff materially breached his duties, obligations, policies, procedures, fiduciary obligations, and/or the agreements

upon which he relies before any alleged breach by Defendant.

27. Plaintiff's claims are barred, in whole or in part, because the alleged severance agreement lacks valid consideration and/or because any consideration supporting the alleged agreement failed.

28. Plaintiff's claims are barred because enforcement of the purported severance provisions would require recognition of unauthorized acts undertaken in violation of Defendant's governing corporate authority structure, policies, and approval requirements and would therefore be inequitable and contrary to public policy.

29. Defendant is entitled to offset, recoupment, restitution, disgorgement, and credit for any compensation, benefits, reimbursements, severance benefits, travel expenses, automobile benefits, vehicle discounts, or other monies improperly received or retained by Plaintiff.

30. Plaintiff's claims for unjust enrichment and/or quantum meruit are barred because Plaintiff alleges the existence of an express contract governing the same subject matter.

31. Plaintiff's claims under the South Carolina Payment of Wages Act are barred because the amounts sought do not constitute wages owed under an authorized, enforceable, and legally binding compensation arrangement.

32. Defendant has not had an opportunity to conduct a full and sufficient investigation or to engage in adequate discovery touching on the circumstances of Plaintiff's allegations. Defendant intends to act expediently to inform itself as to the pertinent facts and prevailing circumstances surrounding any claimed damages and hereby gives notice of its intent to assert any affirmative defenses or allegations of fact that this information-gathering process may indicate are supported by law.

## COUNTERCLAIMS

Defendant, by way of Counterclaims against Plaintiff, would respectfully show and allege as follows:

## FACTUAL ALLEGATIONS

1. Defendant is a wholly owned subsidiary of CeramTec AcquiCo, a German corporation headquartered in Plochingen, Baden-Württemberg, Germany.

2. At all relevant times, Defendant was subject to and governed by written rules of corporate governance promulgated by CeramTec GmbH, an affiliate of CTNA under the common ownership of CeramTec AcquiCo. Defendant, CeramTec AcquiCo and CeramTec GmbH are among a group of related entities operating within the "CeramTec Group."

3. Pursuant to these rules and procedures, prior approval of the Management Board of CeramTec GmbH was required for, among other things: the appointment and dismissal of management staff reporting directly to local management; the introduction or amendment of payment systems and other services in the nature of payment for such staff; the agreement, alteration and termination of bonus payments to management; the conclusion of employment contracts with annual remuneration above EUR 50,000; and any other agreement or transaction with a value or risk above EUR 50,000.

4. These corporate governance rules further required compliance with CeramTec Group policies and prohibited local management from unilaterally creating extraordinary compensation obligations for the Company.

5. At all relevant times, Plaintiff served as a senior executive of Defendant, including as Vice President of Sales and Marketing and, beginning in October 2020, as Secretary of CTNA, CeramTec BidCo LLC, CeramTec Acquisition LLC, and DAI Ceramics LLC. As a senior

executive and officer, Plaintiff owed fiduciary duties of loyalty, honesty, good faith, candor, and fair dealing to Defendant.

6. Plaintiff was familiar with Defendant's governance framework, management approval requirements, travel and expense policies, and corporate approval procedures. Plaintiff received and reviewed relevant and controlling governance documents, approval matrices, employment agreement drafts, and other materials establishing the limits of local management authority.

7. The April 5, 2021, offer letter upon which Plaintiff's claims rest was created at the direction of former CTNA President Brent Pahach ("Pahach") and was not disclosed to, approved by, or authorized by the Management Board of CeramTec GmbH before its execution.

8. The April 5, 2021, offer letter was actually generated during the period from May 27, 2021 through June 1, 2021 and backdated to correspond with a salary increase effective April 5, 2021.

9. Plaintiff knew that neither the Management Board nor senior leadership of CeramTec GmbH had approved the provision purporting to entitle him to twelve months of separation pay and executive-rate medical benefits upon termination of employment for "any cause."

10. Plaintiff further knew that CeramTec GmbH had consistently taken a materially different position regarding executive severance benefits. Plaintiff received and reviewed a proposed employment agreement from CeramTec GmbH in June 2020 providing only six months of severance benefits, conditioned upon execution of a release of claims, and providing no severance benefit upon voluntary resignation or termination for cause.

11. Rather than disclose the inconsistency between the local offer letter and CeramTec

GmbH's proposed agreement, Pahach and Plaintiff revised the terms of the draft agreement from CeramTec GmbH by increasing the severance period from six months to twelve months and replacing CeramTec GmbH signatories with local CTNA signatories. The local offer letter also provided for the payment of severance upon termination of employment "for any cause," a fundamentally self-serving term inconsistent with the legitimate business interests of Defendant.

12. Plaintiff then agreed with Pahach to withhold the revised agreement from CeramTec GmbH unless CeramTec GmbH specifically requested it.

13. Upon information and belief, Plaintiff and Pahach knew these unilateral changes – in particular, the provision of severance to Plaintiff upon termination for any cause – would never be approved by the Management Board of CeramTec GmbH.

14. Plaintiff knowingly accepted the benefits of the unauthorized April 5, 2021, offer letter despite his awareness that its severance provisions differed materially from the terms proposed by CeramTec GmbH.

15. Plaintiff's conduct concerning the unauthorized severance arrangements was part of a broader pattern of self-dealing, misuse of Company assets, circumvention of corporate controls, and abuse of his position for personal benefit.

16. Plaintiff, together with Pahach, engaged in a sustained pattern of unprofessional and insubordinate conduct directed toward CeramTec AcquiCo, CeramTec GmbH and their senior executives. Through numerous internal communications, Plaintiff used disparaging, offensive, and culturally insensitive language to ridicule and undermine CeramTec AcquiCo and CeramTec GmbH's leadership, fostered distrust of corporate management, and encouraged resistance to corporate governance and oversight efforts. Such conduct was inconsistent with Plaintiff's duties and obligations as a senior executive and officer of Defendant.

17. During his employment, Plaintiff repeatedly used Company resources to fund personal and family travel under the guise of legitimate business activity, often without adequate documentation, legitimate business justification, or compliance with Defendant's travel policies – namely, CTNA's Travel-Reimbursement Policy and the CeramTec Group's Worldwide Travel Policy.

18. For example, Plaintiff undertook a three-day trip to Nantes, France, purportedly to bid farewell to a retiring distributor. Plaintiff was unable to provide documentation establishing any legitimate business necessity for the trip beyond a personal farewell visit.

19. Plaintiff also planned an approximately two-week trip to Tokyo, Japan, despite having documentation supporting only a single distributor dinner and no documented schedule of additional business meetings or activities. Plaintiff sought and received reimbursement from Defendant totaling $6,408.91 for a business class ticket for this trip, even though the trip never actually took place. Plaintiff failed to repay this amount.

20. In August 2023, Plaintiff undertook a thirteen-day trip to Seoul, Bangkok, and Osaka accompanied by his son. There was little documented business activity during the trip, yet Plaintiff submitted and received reimbursement for expenses involving both himself and his son, including accommodations, meals, weekend activities, and other expenditures unrelated to any legitimate business purpose.

21. Despite extensive international travel, Plaintiff routinely failed to provide required post-trip reports identifying business contacts, business development activities, and other information necessary to verify the legitimacy of his travel expenditures. Plaintiff's repeated failure to provide such reports impaired oversight and concealed the true nature of many of his claimed business trips.

22. Plaintiff exploited his senior executive position and authority within CTNA to secure reimbursement of these expenditures through approval structures controlled by the same executives who participated in and benefitted from the expenditures.

23. Plaintiff also routinely included members of his family in Company-funded travel and events without legitimate business justification and in direct violation of Company policy.

24. Plaintiff's travel-related conduct violated multiple provisions of CTNA's Travel – Reimbursement Policy and the CeramTec Group's Worldwide Travel Policy, including restrictions on family-member travel, luxury accommodations, entertainment expenses, undocumented business meals, extended stays lacking business necessity, and expenditures lacking adequate business justification.

25. Plaintiff also participated in a March 2023 trip to Montego Bay, Jamaica that was intentionally characterized as a "management meeting" despite the absence of any documented business purpose.

26. Plaintiff attended the Jamaica trip alongside other CTNA executives and numerous family members. The trip involved luxury accommodations, premium travel packages, Club Mobay VIP services, resort activities, meals, and leisure-related expenditures for executives and their family members.

27. The total cost charged to Defendant for the Jamaica trip exceeded $98,000. No agenda, meeting materials, meeting notes, or documented business discussions existed and no meaningful Company business was intended or conducted during the trip.

28. Plaintiff similarly participated in trip to Hawaii involving a seven-day cruise in late February to early March 2024, which included luxury accommodations, extensive family-member participation, entertainment-related activities, excursions, premium airfare, and other personal

expenditures lacking any documented business justification. Defendant incurred expenses exceeding $100,000 in connection with the trip.

29. Plaintiff knowingly participated in and benefited from these trips, despite their obvious lack of any legitimate business purpose and their clear deviation from Defendant's established travel and expense requirements.

30. Plaintiff's self-dealing was not limited to travel expenses.

31. Between 2021 and the first quarter of 2025, Plaintiff simultaneously received a Company vehicle and automobile allowance payments despite written Company policies prohibiting employees from receiving both benefits at the same time. During that period, Plaintiff received approximately $61,000 in automobile allowance payments while also retaining at least one Company-issued vehicle.

32. Plaintiff knew, or reasonably should have known, that receiving both benefits violated established Company policies. Nevertheless, Plaintiff knowingly accepted and retained those benefits without disclosure to or authorization from CeramTec AcquiCo.

33. Plaintiff also personally benefited from below-market purchases of Company-owned vehicles. Specifically, Plaintiff acquired Company-owned Nissan Altima vehicles in 2020 and 2021 for approximately $4,000 each despite estimated market values substantially exceeding those amounts. These transactions were approved outside ordinary valuation procedures and provided Plaintiff with substantial personal financial benefit.

34. As an executive and officer of Defendant, Plaintiff possessed a fiduciary obligation not only to refrain from misuse of Company assets, but also to prevent, disclose, and report suspected misuse of Company assets by others. Rather than fulfilling those obligations, Plaintiff actively participated in, approved, benefitted from, concealed, and perpetuated the misuse of

Company resources described herein.

35. Plaintiff's misconduct was not inadvertent, isolated, or technical in nature. Rather, Plaintiff repeatedly and knowingly participated in a pattern of conduct designed to circumvent corporate oversight, evade established approval requirements, misuse Company assets, and secure financial and personal benefits for himself and other members of CTNA senior management.

36. As a direct and proximate result of Plaintiff's conduct, Defendant has suffered substantial damages in an amount to be proven at trial.

**FOR A FIRST COUNTERCLAIM**
**(Breach of Fiduciary Duty)**

37. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

38. At all relevant times, Plaintiff served as a senior executive and officer of Defendant, including as Vice President of Sales and Marketing and Secretary of multiple affiliated entities.

39. By virtue of those positions, Plaintiff owed fiduciary duties to Defendant, including duties of loyalty, honesty, good faith, candor, disclosure, and the obligation to act in Defendant's best interests.

40. Defendant reposed special confidence and trust in Plaintiff to undertake duties as part of his employment with CTNA, including, *inter alia*, to act in good faith towards CTNA and affiliated entities; to safeguard its monies and assets; to provide truthful and accurate information; and others.

41. Plaintiff knowingly accepted Defendant's special confidence such that he was bound to act in good faith and with due regard towards the interests of Defendant.

42. Plaintiff breached those fiduciary duties through a pattern of misconduct that included, among other things:

a. knowingly accepting and retaining the benefits of unauthorized compensation and severance arrangements that had not been approved through the corporate governance procedures applicable to Defendant and its parent company;

b. participating in the creation, implementation, concealment, and retention of offer letters and compensation arrangements that materially differed from the compensation arrangements approved or proposed by CeramTec GmbH;

c. participating in the misuse of Company assets and funds for personal and family travel lacking legitimate business justification;

d. submitting, obtaining reimbursement for, or benefitting from expenses that violated Company travel and expense policies;

e. accepting dual automobile benefits in violation of Company policy, including both a Company vehicle and automobile allowance payments;

f. obtaining personal financial benefits from below-market purchases of Company-owned vehicles;

g. failing to provide required post-travel documentation and reports designed to ensure accountability over Company-funded travel; and

h. failing to report, disclose, prevent, or remediate the misuse of Company assets and resources by himself and other members of senior management despite his fiduciary obligations to do so.

43. Upon information and belief, Plaintiff engaged in other similar conduct which violates his fiduciary duty to Defendant, and the actions set forth herein are merely the first to be discovered, in part, due to the fact that Plaintiff actually concealed his misconduct.

44. Plaintiff's conduct was intentional, knowing, reckless, and directly contrary to the interests of Defendant.

45. As a direct and proximate result of Plaintiff's breaches of fiduciary duty, Defendant has suffered damages in an amount to be determined at trial.

46. Defendant is entitled to judgment against Plaintiff for the amount of its actual, general, compensatory, incidental, special, and consequential damages, as well as disgorgement,

restitution, pre- and post-judgment interest, costs, attorneys' fees as allowed by law, and punitive damages given the nature of Plaintiff's misconduct.

47. Defendant further seeks and is entitled to recover any compensation, benefits, reimbursements, severance benefits, or other amounts improperly obtained or retained by Plaintiff during the course of his breaches of fiduciary duty, and such other relief as the Court deems just and proper.

**FOR A SECOND COUNTERCLAIM**
**(Breach of Duty of Loyalty)**

48. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

49. As a senior executive and corporate officer, Plaintiff owed Defendant a duty of undivided loyalty.

50. Defendant placed special trust and confidence in Plaintiff, including, *inter alia*, by entrusting him to serve in an executive leadership role and to perform his respective duties in the best interest of Defendant and its affiliated entities, including, but not limited to, safeguarding Company funds and assets for proper business uses.

51. Plaintiff accepted Defendant's trust and confidence.

52. Plaintiff violated and breached that duty by placing his personal financial interests above the interests of Defendant, including, but not limited to, by:

a. pursuing and retaining unauthorized severance benefits for his personal benefit;

b. participating in Company-funded vacations and personal travel disguised as business activities;

c. obtaining improper reimbursements and personal benefits from Company resources;

d. accepting benefits prohibited by Company policy; and

e. participating in conduct intended to circumvent internal controls, governance requirements, and oversight mechanisms.

53. Plaintiff's conduct constituted deliberate self-dealing and was adverse to Defendant's interests.

54. As a direct and proximate result of Plaintiff's breaches, Defendant has suffered and will continue to suffer monetary damages.

55. Defendant is entitled to judgment against Plaintiff for the amount of its actual, general, compensatory, incidental, special, and consequential damages, as well as punitive damages given the nature of Plaintiff's misconduct.

56. Furthermore, Defendant is entitled to recover from Plaintiff all wages paid to him during any period of employment in which he was engaged in any acts disloyal to Defendant. Defendant is entitled to judgment against Plaintiff for disgorgement of compensation, costs, interest, attorneys' fees as allowed by law, and such further relief as the Court deems appropriate.

**FOR A THIRD COUNTERCLAIM**
**(Unjust Enrichment)**

57. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

58. Plaintiff knowingly and wrongfully received and retained benefits from Defendant, including reimbursement of improper travel expenses, unauthorized travel-related expenditures, automobile-related benefits, and below-market vehicle transfers.

59. Plaintiff appreciated and knowingly accepted those benefits without Defendant's authorization to do so.

60. It would be inequitable and unjust for Plaintiff to retain those benefits under the

circumstances.

61. Defendant is therefore entitled to restitution and disgorgement of all improperly received benefits. Defendant seeks an award of restitution, disgorgement, prejudgment interest, costs, and such other relief as the Court deems just and proper.

62. Plaintiff has further been unjustly enriched in the form of the compensation and benefits provided to him during his employment with Defendant, all of which was conditioned upon his duty of loyalty to Defendant and underlying obligations to act in the best interest of Defendant, and to otherwise safeguard any and all funds or assets entrusted to him based upon his employment.

**FOR A FOURTH COUNTERCLAIM**
**(Fraud)**

63. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

64. At all relevant times, Plaintiff occupied positions of trust and confidence with Defendant, including serving as a senior executive and officer of Defendant and its affiliated entities.

65. Plaintiff knew that Defendant, CeramTec GmbH and its parent company, CeramTec AcquiCo, maintained corporate governance requirements restricting the authority of local management to grant or modify executive compensation and severance arrangements without required corporate approvals.

66. Plaintiff further knew that CeramTec GmbH's position concerning executive severance benefits materially differed from the severance provisions contained in the April 5, 2021 offer letter upon which Plaintiff's claims are based. Plaintiff personally received and reviewed a proposed employment agreement from CeramTec GmbH providing significantly narrower

severance rights than those reflected in the local offer letter.

67. Plaintiff knowingly participated in efforts to preserve, maintain, and benefit from severance arrangements that had not been approved through the required corporate approval processes.

68. In particular, Plaintiff revised a proposed employment agreement received from CeramTec GmbH by increasing his severance entitlement from six months to twelve months and replacing CeramTec GmbH signatories with Pahach as the lone signatory for Defendant. Plaintiff also accepted local offer letters calling for the payment of severance upon termination of employment "for any cause," and signed only by Pahach and Defendant's then local Human Resources Manager. Plaintiff thereafter agreed that the revised, self-serving agreement would not be provided to CeramTec GmbH unless requested.

69. Plaintiff knowingly concealed, omitted, and failed to disclose material information concerning the unauthorized nature of the severance provisions upon which he now relies, including his knowledge that CeramTec GmbH had proposed materially different severance arrangements and that the local severance provisions lacked the approvals required by Defendant's governance framework.

70. Plaintiff also knowingly concealed and failed to disclose his participation in a broader pattern of misconduct involving the misuse of Company resources, unauthorized personal benefits, improper reimbursement practices, and violations of Company policies, all of which were material to Defendant's decisions regarding Plaintiff's compensation, continued employment, and eligibility for benefits.

71. Plaintiff made false and/or inaccurate representations and statements to Defendant, as well as material omissions, in order to personally benefit himself and at the direct expense of

the Company.

72. These representations, statements, and omissions were material to the relationship between Plaintiff and Defendant, Defendant's continued reliance on Plaintiff in his executive leadership role, and Defendant's decision to continue to allow Plaintiff to occupy that position of trust within the Company. Further, these representations, statements, and omissions were material to Defendant's decision to continue employing Plaintiff.

73. Plaintiff intended that Defendant rely upon his omissions, concealment, and representations concerning his entitlement to compensation, benefits, and severance protections.

74. Plaintiff knew or should have known of the fraudulent nature of the representations, statements, and omissions he made to Defendant, which were all made in the furtherance of his fraudulent acts.

75. Defendant was unaware of Plaintiff's misconduct and the fraudulent nature of his representations, statements, actions and omissions – which were outside the scope of Plaintiff or Pahach's employment and authority – and reasonably relied upon Plaintiff's position as a trusted executive and officer of the Company.

76. As a direct and proximate result of Plaintiff's fraudulent conduct, Defendant has suffered damages, including but not limited to compensation and benefits improperly obtained or retained by Plaintiff, expenses incurred as a result of Plaintiff's misconduct, and substantial costs associated with responding to Plaintiff's conduct.

77. Plaintiff's actions were willful, intentional, reckless, fraudulent, and undertaken with conscious disregard for the rights and interests of Defendant, thereby entitling Defendant to an award of punitive damages.

**<u>FOR A FIFTH COUNTERCLAIM</u>**
**(Constructive Fraud)**

78. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

79. By virtue of his officer and executive positions, Defendant relied upon Plaintiff to act honestly, faithfully, and in Defendant's best interests.

80. Plaintiff breached those fiduciary obligations by concealing, participating in, and benefitting from unauthorized compensation arrangements, policy violations, and misuse of Company resources.

81. Plaintiff knew or should have known of the falsity of his representations, statements, and material omissions.

82. Said misrepresentations were material in nature, and Plaintiff fully intended for Defendant to rely upon and act in accordance with the information he was providing due to the position of trust he occupied.

83. Defendant was unaware of the falsity and/or inaccuracy of Plaintiff's representations, statements, actions and omissions.

84. Defendant had a right to rely on Plaintiff's misrepresentations and did in fact reasonably rely upon the same.

85. Plaintiff's conduct resulted in financial damage to Defendant.

86. Because Plaintiff occupied a fiduciary relationship with Defendant, his breaches constitute constructive fraud.

87. Defendant is entitled to and seeks actual and special damages, punitive damages, costs, interest, and such other relief as the Court deems appropriate.

**FOR A SIXTH COUNTERCLAIM**
**(Declaratory Judgment)**

88. Defendant realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

89. An actual and justiciable controversy exists between the parties concerning the validity and enforceability of the April 5, 2021 offer letter and the severance provision upon which Plaintiff's claims are based.

90. Defendant contends that the severance provision was never properly authorized or approved in accordance with the governance requirements applicable to Defendant.

91. Defendant further contends that Plaintiff knew or should have known that the severance provision lacked the approvals required under Defendant's governing documents and approval framework.

92. Defendant further contends that Plaintiff's own misconduct, breaches of fiduciary duty, and breaches of loyalty independently bar or limit any recovery under the severance provision.

93. Plaintiff disputes Defendant's contentions.

94. Defendant requests a declaration that:

a. the severance provision relied upon by Plaintiff is void, unenforceable, or otherwise does not entitle Plaintiff to the severance benefits he seeks;

b. Plaintiff is not entitled to recover severance benefits under the April 5, 2021 offer letter;

c. Defendant is entitled to offset or recoup any amounts otherwise recoverable by Plaintiff; and

d. Defendant is entitled to such additional declaratory relief as the Court deems proper.

**WHEREFORE**, Defendant respectfully requests that the Court enter judgment in its favor and against Plaintiff for its actual, general, compensatory, incidental, special, consequential, and punitive damages; for disgorgement, restitution, and unjust enrichment damages as permitted by law; for pre- and post-judgment interest; for its reasonable attorneys' fees and costs to the fullest extent permitted by law; and for such other and further legal, equitable, or declaratory relief as the Court deems just and proper.

Respectfully submitted,

By: *s/ William H. Foster*
William H. Foster, Bar No. 6221
bfoster@littler.com
Katie E. Towery, Bar No. 12861
ktowery@littler.com
LITTLER MENDELSON P.C.
110 E. Court Street, Suite 201
Greenville, SC 29601
Telephone: 864-775-3190

*Attorneys for Defendant CeramTec North America, LLC*

October 29, 2026