**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Roberto Vigo,<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>CeramTec North America, LLC,<br><br>*Defendant/Counter-Plaintiff.* | Civil Action No. 6:26-cv-04399-DCC |

**MEMORANDUM IN SUPPORT OF PLAINTIFF/COUNTER-DEFENDANT ROBERTO VIGO'S PARTIAL MOTION TO DISMISS DEFENDANT'S FOURTH AND FIFTH COUNTERCLAIMS**

Vigo sued CTNA for refusing to pay the severance promised in an offer letter that CTNA's President and Human Resources Manager signed on CTNA's behalf. CTNA answered by accusing its former Vice President of fraud. Its fraud counterclaims, however, never say what Vigo falsely said, to whom, or when. Instead, CTNA’s own pleadings defeat its claims. CTNA alleges the offer letter was created at the direction of its own President, Brent Pahach, who signed it. The only people CTNA says were kept in the dark work for a German affiliate, CeramTec GmbH, which is not a party. Further, CTNA admits it never paid the severance, so it suffered no loss by relying on the letter resulting in no damages.The remainder of the fraud counts recycles CTNA's travel-expense and vehicle allegations without identifying any false expense report, statement, or certification. A fraud claim requires a misrepresentation that the claimant believed, relied on, and was harmed by. Counts Four and Five plead none of these with the particularity Rule 9(b) demands, and they should be dismissed.

## BACKGROUND

The facts below come from CTNA's Counterclaims ("Countercl.") and Answer (ECF No. 10) and are accepted as true solely for this motion. Vigo denies CTNA's allegations of misconduct.

**Vigo's employment and the offer letter.** Vigo worked for CTNA from November 2007 until June 18, 2025, ultimately as Vice President of Sales and Marketing. (ECF 10, Answer ¶¶ 6, 12.) In a letter dated April 5, 2021, CTNA confirmed Vigo's role, salary, bonus eligibility, car allowance, and a severance provision of twelve months' base salary plus executive-rate medical benefits upon termination "for any cause." (ECF 10,Answer ¶¶ 7, 9–10; ECF No. 1-1 Compl. ¶ 10.) The letter was signed "On Behalf of CeramTec North America LLC" by Kayli Merritt, Human Resources Manager, and Brent Pahach, President. (ECF 10,Answer ¶ 7; Exhibit 1- Offer letter.)

**CTNA's theory.** CTNA alleges that the letter "was created at the direction of" Pahach and was not disclosed to or approved by the Management Board of CeramTec GmbH, a German affiliate whose governance rules CTNA says applied to it. (ECF 10, Countercl. ¶¶ 2–3, 7.) CTNA alleges that Pahach and Vigo revised a June 2020 GmbH draft agreement, increased its severance term, substituted CTNA signatories, and agreed not to provide the revised agreement "to CeramTec GmbH unless requested." (*Id.* ¶¶ 10–12, 68.) CTNA does not allege that Merritt, Pahach, or anyone else at CTNA was unaware of the letter's terms.

**Expense and vehicle allegations.** CTNA separately alleges that Vigo took business trips lacking adequate documentation, received a car allowance while also using a company vehicle, and bought two company vehicles below market value. (ECF 10, Countercl. ¶¶ 17–33.) CTNA alleges these expenditures were approved "through approval structures controlled by" CTNA executives. (*Id.* ¶ 22.) It identifies no portion of any expense report, reimbursement request, or other statement by Vigo that was false.

**Termination.** CTNA terminated Vigo on June 18, 2025, asserting cause, and admits it has paid him no separation pay or executive-rate medical benefits. (ECF 10, Answer ¶¶ 19, 25.)

**The fraud counts.** The Fourth Counterclaim alleges generally that Vigo made "false and/or inaccurate representations and statements to Defendant, as well as material omissions," that were material to CTNA's decision to continue employing him. (ECF 10, Countercl. ¶¶ 71–72.) The Fifth Counterclaim realleges the same "representations, statements, and material omissions" under a constructive fraud label. (*Id.* ¶¶ 81–84.) Neither count quotes, dates, or describes any statement.

## LEGAL STANDARD

A counterclaim is tested under Rule 12(b)(6) the same way as a complaint. It must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels, conclusions, and "[t]hreadbare recitals of the elements of a cause of action" are not accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider documents integral to and relied on in the pleading, such as the offer letter here. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Fraud claims must also satisfy Rule 9(b): "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In the Fourth Circuit, those circumstances are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The rule gives the accused fair notice, guards against fishing-expedition claims, and protects the accused's reputation from baseless charges of fraud. *Id.* A fraud claim that fails Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Id.* at 783 n.5.

South Carolina law, which the parties' pleadings invoke, supplies the elements. Fraud requires: (1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or reckless disregard of its truth; (5) intent that it be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely; and (9) the hearer's consequent and proximate injury. *M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980). Failure to plead any one element is fatal. *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 242, 363 S.E.2d 691, 692 (1988).

## ARGUMENT

### I. The Fourth Counterclaim fails to state a claim for fraud.

#### A. CTNA identifies no false representation, as Rule 9(b) requires.

The Fourth Counterclaim's only description of a misrepresentation is that Vigo "made false and/or inaccurate representations and statements to Defendant, as well as material omissions." (ECF 10, Countercl. ¶ 71.) That sentence names no statement, no date, no recipient, and no medium. It is the kind of "[t]hreadbare recital" that fails even Rule 8, *Iqbal*, 556 U.S. at 678, and it falls far short of the "time, place, and contents" Rule 9(b) requires. *Harrison*, 176 F.3d at 784.

Nothing elsewhere in the Counterclaims fills the gap. The offer letter's terms, including the severance provision, appear on the face of a document CTNA's own officers signed. CTNA does not allege that Vigo misdescribed those terms to anyone at CTNA. CTNA's allegations about the June 2020 GmbH draft describe drafting choices and an agreement about what to send to GmbH, not a statement by Vigo to CTNA. (ECF 10, Countercl. ¶¶ 10–12, 68.) And the expense and vehicle allegations identify no false expense report, receipt, certification, or reimbursement request. (*Id.* ¶¶ 17–33.)

CTNA's fallback, that Vigo "concealed" or "failed to disclose" material information (ECF 10, Countercl. ¶¶ 69–70), fails state allege any fact to establish a plausible claim for relief. Even where courts relax Rule 9(b) for omissions, the pleader must still identify what was concealed, from whom, when, and what the pleader would have done differently had it known. *Hansen v. DHL Lab., Inc.*, 316 S.C. 505 (1994) (holding South Carolina Rule 9(b) requires the circumstances constituting fraud to be stated with particularity, and that requirement applies to all averments of fraud); *Wells Fargo Bank, N.A. v. Morgan,* 2018 S.C. C.P. LEXIS 6191; 2018 LX 31886 (August 24, 2018; Early III, J.) (South Carolina Circuit Court found the allegations deficient specifically because Morgan did not identify who allegedly concealed information or identify the particular documents allegedly forged.). CTNA does none of this. It does not name any CTNA decision-maker who was kept uninformed, and it does not say when any disclosure should have occurred.

CTNA cannot excuse these gaps by pointing to information in Vigo's possession. The relevant facts are CTNA's own: its officers signed the letter, its approval structures processed the expenses (ECF 10, Countercl. ¶ 22), and it placed Vigo on leave pending an internal audit before terminating him (ECF 10, Answer ¶ 13). A party holding its own records and the results of an audit has no basis to plead fraud by generality. Two key allegations are made only "[u]pon information and belief," with no stated basis. (ECF 10, Countercl. ¶ 13.) Rule 9(b) exists to prevent exactly this use of a fraud label, which damages a former executive's reputation without giving him notice of what he supposedly said. *Harrison*, 176 F.3d at 784 ("Rule 9(b) protects defendants from harm to their goodwill and reputation.") (internal citations and quotations omitted).

**B. CTNA's own allegations negate ignorance, reliance, and the right to rely.**

Fraud requires that the *hearer* be ignorant of the falsity, rely on the representation, and have a right to rely. *M.B Kahn Contr. Co.*, 275 S.C. at 384, 271 S.E.2d at 415. CTNA's allegations

foreclose all three as to the offer letter. CTNA pleads that the offer letter "was created at the direction of" its President, Pahach, who signed it on CTNA's behalf alongside its Human Resources Manager. (ECF 10, Countercl. ¶ 7; Answer ¶ 7.) CTNA pleads that Pahach participated in every step it now calls deceptive. (ECF 10, Countercl. ¶¶ 11–13, 68.) A corporation acts and knows only through its officers, and their knowledge of matters within their duties is attributed to it. *See* Restatement (Third) of Agency § 5.03 (2006). Hiring and compensating a direct report fell squarely within the President's role. CTNA cannot plead that it was ignorant of terms its President drafted and signed, or that it relied on Vigo to tell it what its own letter said.

CTNA's response, that Pahach's conduct was "outside the scope" of his authority (ECF 10, Countercl. ¶ 75), is a bare conclusion. CTNA pleads no facts showing that Pahach totally abandoned CTNA's interests, as the narrow adverse-interest exception requires. *See* Restatement (Third) of Agency § 5.04. Nor does CTNA allege that Merritt, the co-signing Human Resources Manager, was deceived about anything.

CTNA does allege, in general terms, that “Defendant was unaware” of the falsity of Vigo’s “representations, statements, actions and omissions.” (Countercl. ¶¶ 75, 83, ECF No. 10.) Those allegations recite the sixth element of fraud and nothing more. They do not identify any CTNA officer, director, or employee who was unaware of anything, what that person did not know, or when. And they cannot be squared with CTNA’s own allegations that its President directed the creation of the offer letter and signed it, together with its Human Resources Manager, on CTNA’s behalf. (*Id.* ¶¶ 7, 68; Ex. 1.) A conclusory assertion of ignorance is a “[t]hreadbare recital” that the Court need not accept as true. *Iqbal*, 556 U.S. at 678.

When CTNA’s pleading does get specific about who was kept uninformed, the answer is always CeramTec GmbH. CTNA alleges that the letter was not “disclosed to, approved by, or

authorized by the Management Board of CeramTec GmbH." (Countercl. ¶ 7.) It alleges that Vigo and Pahach agreed to withhold the revised draft agreement "from CeramTec GmbH unless CeramTec GmbH specifically requested it." (*Id.* ¶ 12; *see also id.* ¶ 68.) No paragraph identifies anyone at CTNA from whom anything was withheld. Paragraphs 69 and 70 allege that Vigo "concealed" information but do not say from whom. GmbH is a separate company and is not a party. (*Id.* ¶ 2.) A fraud claim belongs to the person who heard, believed, and relied on the misrepresentation. CTNA cannot recover in fraud for concealment allegedly directed at its affiliate.

**C. CTNA pleads no injury caused by reliance.**

The ninth element requires an injury proximately caused by the claimant's reliance. *M.B Kahn Contr. Co*, 275 S.C. at 384, 271 S.E.2d at 415. CTNA pleads none.

The severance provision is the centerpiece of CTNA's fraud theory, yet CTNA admits it has paid Vigo no separation pay and no executive-rate medical benefits. (ECF 10, Answer ¶ 19.) An unpaid benefit is not a loss. It is CTNA's defense to Vigo's contract claim, which CTNA has already pleaded at length. (ECF 10, Answer, Affirmative Defenses ¶¶ 14, 22–28.)

CTNA's alternative theory is that it relied by continuing to employ Vigo. (ECF 10, Countercl. ¶ 72.) But CTNA admits Vigo worked for it for more than seventeen years and was "more than fully compensated for any employment services he provided." (ECF 10, Answer ¶¶ 36–37.) Paying an employee for services actually rendered is not a fraud injury. CTNA's remaining damages allegation lists generic categories, including "substantial costs associated with responding to Plaintiff's conduct." (ECF 10, Countercl. ¶ 76.) Those are conclusions, not facts. And costs of investigating or litigating are not losses caused by reliance on a misrepresentation.

**D. The expense and vehicle allegations do not supply a fraud claim.**

CTNA folds its travel and vehicle allegations into the fraud count by reference. (ECF 10, Countercl. ¶¶ 63, 70.) They describe policy disputes, not misrepresentations.

The car allowance appears in the offer letter CTNA signed. (ECF 10, Answer ¶ 9.) The vehicle sales were transactions CTNA itself approved. (ECF 10, Countercl. ¶ 33.) The travel reimbursements were processed through CTNA's own approval structures. (*Id.* ¶ 22.) The Tokyo allegation is that Vigo was reimbursed for a ticket for a trip that did not occur and has not repaid it. (ECF 10, *Id.* ¶ 19.) That describes, at most, an unpaid obligation, not a false statement. CTNA has already pleaded these same facts as breach of fiduciary duty, breach of the duty of loyalty, and unjust enrichment. (ECF 10, Countercl. ¶¶ 37–62.) Relabeling them as fraud adds a charge of dishonesty and a demand for punitive damages, but not the particulars Rule 9(b) requires.

**II. The Fifth Counterclaim fails for the same reasons.**

Constructive fraud requires every element of actual fraud except intent to deceive. *Ardis v. Cox*, 314 S.C. 512, 516, 431 S.E.2d 267, 269 (Ct. App. 1993). Removing intent does not cure the defects identified above, none of which turns on Vigo's state of mind.

Rule 9(b) governs any claim "alleging fraud," and the Fifth Counterclaim rests expressly on Vigo's supposed "misrepresentations," "representations, statements, and material omissions." (ECF 10, Countercl. ¶¶ 81–84.) Rule 9(b) relaxes only the pleading of conditions of mind, which may be alleged generally. Fed. R. Civ. P. 9(b). It does not relax the requirement to identify the statements themselves. CTNA identifies none. (*See* Part I.A, *supra*.) Paragraph 84 asserts that CTNA "had a right to rely on Plaintiff's misrepresentations and did in fact reasonably rely upon the same." That restates elements seven and eight without a *single* supporting fact. CTNA's own pleading, moreover, establishes that its President directed and signed the offer letter, that the

persons allegedly kept uninformed were GmbH's, and that CTNA paid no severance. (*See* Parts I.B–C, *supra*.) Those allegations defeat ignorance, reliance, the right to rely, and injury regardless of intent.

The Fifth Counterclaim alleges that Vigo "breached those fiduciary obligations by concealing, participating in, and benefitting from" the conduct already pleaded in the First Counterclaim. (ECF 10, Countercl. ¶ 80; *compare id.* ¶ 42.) To the extent it states anything, it states the fiduciary duty claim CTNA has already brought, under a label that adds an accusation of fraud without the facts that label requires.

## CONCLUSION

Vigo respectfully requests that the Court dismiss the Fourth Counterclaim (Fraud) and the Fifth Counterclaim (Constructive Fraud). Because CTNA's own allegations, not merely a lack of detail, defeat ignorance, reliance, and injury as to the offer letter, dismissal of that theory should be with prejudice. Alternatively, any leave to replead should require CTNA to identify each alleged misrepresentation or omission, its date, its speaker and recipient, and the reliance and injury it caused.

Respectfully submitted,

GROVE OZMENT, L.L.C.

s/Matthew R. Ozment
Matthew R. Ozment (Fed. ID No 12403)
Matt@go-lawyers.com
100 Williams Street
Greenville, SC 29601
Telephone: 864-516-2222

*Attorney for Plaintiff/Counter-Defendant*
*Roberto Vigo*

October 30, 2026