**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Roberto Vigo,<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>CeramTec North America, LLC,<br><br>*Defendant/Counter-Plaintiff.* | Civil Action No. 6:26-CV-04399-DCC<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT ROBERTO VIGO'S PARTIAL MOTION TO DISMISS** |

Defendant/Counter-Plaintiff CeramTec North America, LLC, ("CTNA") by and through its undersigned counsel, hereby submits this Response in Opposition to Plaintiff/Counter-Defendant Roberto Vigo's ("Vigo") Partial Motion to Dismiss Defendant's Fourth and Fifth Counterclaims. ("Partial Motion to Dismiss" or "Partial MTD," ECF No. 11.)[1]

## I. INTRODUCTION

Vigo's Partial Motion to Dismiss rests on a fundamental mischaracterization of CTNA's fraud and constructive fraud counterclaims. According to Vigo, both claims fail because CTNA does not identify a particular false statement Vigo made concerning his alleged severance agreement. But CTNA does not premise its counterclaims on a single unidentified statement about the contents of that agreement. Rather, CTNA alleges that Vigo, while serving as a senior executive and corporate officer owing fiduciary duties to CTNA, knowingly concealed and failed to disclose unilateral changes to his severance agreement that he knew were unauthorized and had not received the required corporate approval. (ECF No. 10 ("Counterclaims" or "Countercl.") at ¶¶ 64-69.)

[1] Citations to the Partial MTD herein are in reference to the Memorandum in Support thereof. (ECF No. 11-1.)

CTNA separately alleges that Vigo made false representations and statements to CTNA, as well as material omissions, and that he knowingly concealed and failed to disclose his participation in a broader pattern of misconduct involving misuse of Company resources, unauthorized personal benefits, improper reimbursement practices, and violation of Company policies. (*Id.* at ¶¶ 70-71.)

The detailed factual allegations incorporated into those counts identify the conduct underlying each theory. As to the severance arrangement, CTNA alleges that Vigo knew local management lacked the authority to modify his executive compensation (including, of course, his putative severance) without required approval; knew CeramTec GmbH had proposed materially narrower severance benefits; participated in making unilateral changes that increased his severance from six months to twelve months and provided for payment of severance upon termination "for any cause;" accepted local offer letters providing for severance upon termination "for any cause" knowing that this provision was not, and never would be, approved by CeramTec GmbH; substituted the required CeramTec GmbH signatories with local CTNA signatories; and agreed with then-President Brent Pahach that the revised agreement would be withheld from CeramTec GmbH unless it was requested. (Countercl. at ¶¶ 2-14, 65-69.)[2]

As to Vigo's broader misconduct, CTNA identifies the Company resources and benefits misused or improperly retained, including travel reimbursements and automobile benefits, and alleges that Vigo concealed those activities while CTNA continued to rely upon him as a senior executive and officer entrusted to prevent the very same forms of fraud, waste and abuse in which Vigo instead indulged. (Countercl. at ¶¶ 17-35, 70-76.)

[2] Vigo's "for any cause" severance arrangement represents a level of brazen self-dealing to the detriment of CTNA and CeramTec GmbH that Vigo should have opposed, rejected and reported, instead of facilitating, accepting and concealing.

Vigo's remaining arguments fare no better because they require factual inferences in his favor. Most notably, Vigo contends that Pahach's participation establishes, as a matter of law, that CTNA knew the facts allegedly concealed. That argument takes the executive whom CTNA alleges participated with Vigo in circumventing CTNA's required approval process and treats his knowledge of that very circumvention as CTNA's knowledge and authorization. But CTNA expressly alleges that Vigo and Pahach acted outside of and beyond their authority and bypassed the governing approval process. (Countercl. at ¶¶ 67-69, 75.) Whether Pahach possessed the relevant authority and whether his knowledge is attributable to CTNA under those circumstances are not pleading deficiencies apparent from the face of the Counterclaims. In other words, Vigo is free to argue that he was somehow entitled to defraud his employer because his immediate supervisor participated in the same scheme. But whether that bootstrapped theory has any merit is not a determination that can be made at this stage.

CTNA has pled the facts necessary to state plausible claims for fraud and constructive fraud. Vigo's disagreement with those allegations, and his demand for additional evidentiary detail before discovery, do not warrant dismissal under Rules 12(b)(6) or 9(b). The Motion should therefore be denied.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations," a pleading that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When considering a motion under Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *See Iqbal*, 556 U.S. at 678.

For claims alleging fraud, Rule 9(b) additionally requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Generally, this requires allegations concerning the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal citations omitted). At the same time, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which []he will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*; *see also Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023).

The Fourth Circuit applies a relaxed Rule 9(b) standard to allegations of fraud by omission or concealment. *Corder*, 57 F.4th 384 at 401-02. As the Court explained, "[i]n cases involving alleged fraud by omission or concealment, it is well-nigh impossible for plaintiffs to plead all necessary facts with particularity" because those facts "will often be in the sole possession of the defendant." *Id.* at 402. Requiring the ordinary degree of particularity in those circumstances would "create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery." *Id.* (quoting *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998)). Accordingly, when alleging fraud by omission or concealment, a party "may partly rely on information and belief without running afoul of Rule

9(b)," so long as it states factual allegations making that belief plausible. *Id.* The Fourth Circuit has since reiterated that Rule 9(b)'s particularity requirement is therefore "relaxed but not eliminated" in "cases involving alleged fraud by omission or concealment." *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 200 (4th Cir. 2025) (quoting *Corder*, 57 F.4th at 402).

## III. <u>ARGUMENT</u>

### A. CTNA Adequately Pleads its Fraud Counterclaim.

Vigo's Partial Motion to Dismiss demands more than Rule 12(b)(6) requires. Rather than accept CTNA's well-pleaded allegations as true, Vigo repeatedly faults CTNA for not identifying the precise documents containing alleged misrepresentations, the recipients of particular communications, which corporate actors possessed particular knowledge, and other evidentiary details concerning the alleged misconduct. (*See* Partial MTD at pp. 4–7.) But Rule 12(b)(6) does not require CTNA to *prove* its fraud claim before discovery. The question is whether CTNA has pleaded sufficient facts, accepted as true and viewed in its favor, to state a plausible claim for relief. CTNA has more than carried its burden in that regard.

Vigo's argument also conflates two distinct aspects of CTNA's fraud claim and attributes allegations concerning one theory to the other. As to the severance arrangement, CTNA alleges fraud through conduct, omission and concealment, not an unidentified affirmative misrepresentation concerning the agreement's terms. (Countercl. at ¶ 69.) CTNA alleges that Vigo: (1) knew local management lacked authority to modify his executive compensation without required approval; (2) knew CeramTec GmbH had proposed materially narrower severance benefits; (3) participated in unilateral changes that increased his severance from six months to twelve months and provided for payment of severance upon termination "for any cause"; (4) accepted local offer letters providing for severance upon termination for "any cause" knowing that

provision was not – and never would – be approved by CeramTec GmbH; (5) changed the proposed signatory structure to conceal the revised severance terms; and (6) agreed with then-President Pahach that the revised agreement would not be provided to CeramTec GmbH unless requested. (*Id.* at ¶¶ 3–14, 65–69.) Yet Vigo repeatedly faults CTNA for failing to identify the particular affirmative false statement underlying the severance theory, even though CTNA's actual argument plainly does not rely exclusively upon such a statement. (*See generally*, Partial MTD.)

CTNA's allegations of affirmative representations and statements concern a separate and broader pattern of self-dealing and fraudulent misconduct. Paragraph 70 alleges that Vigo "knowingly concealed and failed to disclose his participation in a broader pattern of misconduct involving the misuse of Company resources, unauthorized personal benefits, improper reimbursement practices, and violations of Company policies." (Countercl. at ¶ 70.) Paragraph 71 then separately alleges that, in connection with that broader misconduct, Vigo "made false and/or inaccurate representations and statements to Defendant, as well as material omissions, in order to personally benefit himself and at the direct expense of the Company." (*Id.* at ¶ 71.)

CTNA's pleading thus does not merely rely upon an unidentified affirmative statement by Vigo regarding his severance arrangement, as Vigo's Partial Motion to Dismiss suggests. It alleges actions, omissions and concealment as to severance and representations, statements, actions and omissions in connection with the separately pleaded broader misconduct. (*See* Countercl. at ¶¶ 69-71.) Vigo cannot collapse those distinct allegations and then attack CTNA for failing to sufficiently plead a theory it did not allege. Nor can Vigo artificially confine CTNA's fraud claim to the severance arrangement upon which he originally sued to enforce while largely ignoring the broader misconduct CTNA subsequently pleaded in its Counterclaims.

Nor are those broader allegations pleaded in the abstract. The Fourth Counterclaim

expressly incorporates CTNA's detailed factual allegations concerning Vigo's alleged misconduct. (Countercl. at ¶ 63.) Among other things, CTNA alleges that Vigo:

- obtained $6,408.91 in reimbursement for a business-class ticket for a Tokyo trip that never occurred and failed to repay that amount; (Countercl. at ¶ 19.)

- received reimbursement for expenses associated with a thirteen-day trip to Seoul, Bangkok and Osaka involving his son; (*Id.* at ¶ 20.)

- participated in substantial Company-funded travel to Jamaica and Hawaii allegedly lacking legitimate business justification, which together exceeded $198,000 in expenses to CTNA; (*Id.* at ¶¶ 26-29.)

- failed to provide required post-trip reporting; (*Id.* at ¶ 21.)

- received approximately $61,000 in automobile allowances while simultaneously retaining a Company vehicle contrary to Company policy (*Id.* at ¶ 31.); and

- obtained Company-owned vehicles at below-market prices. (*Id.* at ¶ 33.)

These are not bare conclusions or a formulaic recitation of fraud. They identify the particular transactions and misconduct underlying CTNA's claim, the benefits Vigo allegedly obtained, the information allegedly misrepresented or withheld, and the financial harm allegedly suffered by CTNA. Vigo may dispute those allegations, demand additional proof of them, or offer a competing explanation for the underlying conduct. But none of that establishes a pleading deficiency. His insistence on additional documents, communications, and details concerning who knew what and when improperly asks CTNA to supply its evidence at the Rule 12(b)(6) stage rather than determine whether CTNA has adequately pleaded its claim.

**B. CTNA plausibly alleged the elements of fraud.**

Under South Carolina law, fraud requires: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and

proximate injury." *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011) (quoting *M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 271 S.E.2d 414, 415 (S.C. 1980)). CTNA's allegations, taken as true, plausibly establish each.

**Representation and Falsity.** Vigo begins from the premise that CTNA must identify a particular false *statement*, arguing that CTNA does not identify a "false expense report, receipt, certification, or reimbursement request." (Partial MTD at p. 4.) But the relevant element is a false *representation*, and CTNA expressly alleges both representations and material omissions and concealment. CTNA alleges that, in connection with the broader misconduct identified in Paragraph 70, Vigo made "false and/or inaccurate representations and statements to Defendant, as well as material omissions." (Countercl. at ¶ 71.) The incorporated allegations identify the underlying conduct, including travel reimbursements, personal benefits, automobile allowances, Company vehicles, and other misuse of Company funds and resources. (*Id.* at ¶¶ 17–35.) As to severance, CTNA separately alleges Vigo's concealment of material facts surrounding an unauthorized arrangement in which he participated and from which he stood to benefit. (*Id.* at ¶¶ 3-14, 65–69.) Vigo's insistence on an affirmative false statement ignores CTNA's separate allegations of material omissions and concealment.

**Materiality.** Vigo similarly attempts to characterize the expense and vehicle allegations as mere "policy disputes" rather than fraud. (Partial MTD at p. 8.) But CTNA alleges more than technical policy violations. The representations and omissions concerned Vigo's use of Company funds and resources, his receipt of compensation and personal benefits, the legitimacy of expenditures paid or reimbursed by CTNA, and his compliance with policies governing that conduct. (Countercl. at ¶¶ 17-35.) CTNA further alleges that this information was material to its

continued reliance on and employment of Vigo as a senior executive. (Countercl. at ¶¶ 70–72.) Those allegations must be accepted as true at this stage.

**Knowledge and Intent.** CTNA alleges that Vigo personally participated in and benefited from the underlying conduct. Among other things, he allegedly knew the nature of the expenditures and benefits he received, knew or reasonably should have known that receiving simultaneous automobile benefits violated Company policy, and knowingly concealed and failed to disclose the underlying misconduct. (Countercl. at ¶¶ 17–35, 70–74.) Regarding severance, CTNA alleges that Vigo knew the limitations on local management's authority, knew CeramTec GmbH had proposed materially different severance terms, and nevertheless participated in revising those terms without the required approval. (*Id.* at ¶¶ 3–14, 65–69.) CTNA further alleges that Vigo made the representations and omissions at issue to benefit himself at CTNA's expense and intended CTNA to rely upon them. (*Id.* at ¶¶ 71, 73–74.) These are not mere recitations of Vigo's state of mind; they are tied to the conduct through which he allegedly obtained the benefits at issue.

**Ignorance.** Vigo argues that CTNA cannot plead ignorance because Pahach directed and signed the offer letter, Merritt co-signed it, and the only persons allegedly kept uninformed were at CeramTec GmbH. (Partial MTD at pp. 6-7.) But that argument does not identify a missing allegation; it asks the Court to reject CTNA's allegation that it "was unaware of Plaintiff's misconduct and the fraudulent nature of his representations, statements, actions, and omissions" based on Vigo's competing view of whose knowledge should be attributed to CTNA. (Countercl. at ¶ 75.) Pahach's title does not establish imputation as a matter of law where CTNA alleges that he acted outside the scope of his authority and contrary to CTNA's interests. *See Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 (4th Cir. 1995) (explaining that knowledge is not imputed to the principal where the agent acts outside the scope of the agency relationship or where the

agent's and principal's interests are adverse). Nor does CeramTec GmbH's status as a separate entity resolve whether Vigo and Pahach circumvented the corporate governance and approval structure establishing and governing their authority. Those issues cannot be resolved against CTNA on the pleadings.

**Reliance and the Right to Rely.** Vigo's reliance argument rests on the same premise: because CTNA's then-President participated in the severance arrangement, CTNA supposedly could not have relied on Vigo to disclose information concerning it. (Partial MTD at pp. 6-7.) But CTNA truthfully alleges that Vigo was a senior executive and corporate officer entrusted to act in CTNA's interests and owed duties of loyalty, honesty, good faith, candor, and disclosure. (Countercl. at ¶¶ 5, 34, 38–41, 64, 72, 75.) CTNA further alleges that it reasonably relied on Vigo in that capacity. (*Id.* at ¶¶ 72, 75.) Whether that reliance was ultimately reasonable in light of the knowledge or conduct of other corporate actors presents a factual question; it does not render CTNA's allegations deficient under Rule 12(b)(6).

**Injury.** Finally, Vigo argues that CTNA cannot establish injury because it never paid him severance and because compensation paid for services actually rendered cannot constitute fraud damages. (Partial MTD at p. 7.) But that artificially reduces CTNA's alleged injury to two categories while ignoring the broader damages actually pleaded. CTNA's fraud claim is not limited to an unpaid (and, notably, *unauthorized and disputed*) severance obligation or Vigo's ordinary compensation. CTNA alleges damages arising from the broader misconduct incorporated into the fraud claim, including compensation and benefits Vigo improperly obtained or retained and expenses CTNA incurred as a result of that misconduct. (Countercl. at ¶ 76.) The allegations identify concrete financial harm, including the $6,408.91 airfare reimbursement Vigo allegedly obtained and failed to repay approximately $61,000 in automobile allowances allegedly paid while

Vigo simultaneously retained a Company vehicle. (*Id.* at ¶¶ 19, 31–32.) Vigo may dispute whether those losses were caused by fraud, but that is different from saying CTNA pleaded no injury at all.

CTNA therefore alleges far more than the elements of fraud in the abstract. Vigo's Partial Motion to Dismiss repeatedly attempts to recast disputed issues of knowledge, imputation, reliance, causation, and the nature of CTNA's losses as pleading deficiencies. But CTNA alleges the underlying conduct, Vigo's role and knowledge, the material information allegedly misrepresented or withheld, CTNA's reliance, and identifiable resulting harm. Whether CTNA ultimately proves those allegations is a question for another stage; at this stage, they are sufficient to state a plausible claim for fraud under Rule 12(b)(6).

### C. Even if the Affirmative-Misrepresentation Allegations Were Insufficient, CTNA Independently States a Fraud Claim Based on Omission and Concealment.

Even if the Court were to conclude that CTNA has not identified affirmative representations with sufficient particularity under Rule 9(b), the Fourth Counterclaim should not be dismissed. CTNA independently alleges fraud through omission and concealment, to which the Fourth Circuit applies a relaxed Rule 9(b) standard. *Corder*, 57 F.4th at 401–02; *Scharpf*, 137 F.4th at 200.

CTNA's allegations identify the information Vigo allegedly concealed with substantial specificity. As to the severance arrangement, CTNA alleges that Vigo knew the limits on local management's authority, knew CeramTec GmbH had proposed materially different severance terms, participated in a revised arrangement without the required corporate approval, and agreed that the revised agreement would not be disclosed to CeramTec GmbH unless specifically requested. (Countercl. at ¶¶ 3–14, 65–69.) CTNA separately alleges that Vigo concealed and profited from a broader pattern of misconduct involving unauthorized personal benefits, improper reimbursements, misuse of Company resources, and violations of Company policies. (*Id.* at ¶¶ 17–

35, 70.) Thus, contrary to Vigo's repeated focus on the absence of a particular affirmative false statement, CTNA's fraud claim does not depend exclusively on one.

Those allegations fit squarely within *Corder*. CTNA identifies the conduct allegedly concealed, Vigo as the person responsible for the concealment, his knowledge of the underlying facts, his duty as a corporate officer to disclose material information, and the manner in which he allegedly benefited. (Countercl. at ¶¶ 5–35, 64–76.) Rule 9(b) requires particularity, but *Corder* recognizes that it may be "well-nigh impossible" to plead fraudulent omission or concealment with the same particularity as an affirmative misrepresentation because the missing information may be within the alleged wrongdoer's possession. 57 F.4th at 402.

Vigo's arguments demonstrate precisely why that distinction matters. He faults CTNA for failing to identify the precise documents containing alleged misrepresentations and argues that CTNA cannot rely on information made "[u]pon information and belief." (*See* Partial MTD at pp. 4–5.) But those arguments effectively demand details concerning the very information and communications CTNA alleges Vigo concealed. *Corder* cautions against that "Catch-22": a claimant alleging concealment cannot be required, before discovery, to possess the information allegedly withheld from it. 57 F.4th at 402. Nor does Vigo's reliance on Pahach's knowledge eliminate the concealment theory at the pleading stage. As explained above, whether Pahach's knowledge is properly imputed to CTNA depends on the scope of his authority and whether he acted adversely to CTNA's interests, issues Vigo cannot resolve simply by relying on Pahach's title.

Vigo likewise cannot defeat the concealment allegations by emphasizing that CeramTec GmbH is a separate corporate entity. (*See* Partial MTD at pp. 6-7.) CTNA does not rely on CeramTec GmbH's lack of knowledge because the entities are interchangeable. Rather, the alleged

concealment from CeramTec GmbH matters because CTNA alleges that the applicable governance structure required approvals beyond local management and that Vigo knew of and participated in circumventing that structure. (Countercl. at ¶¶ 3–14.) The corporate distinction therefore does not answer whether Vigo concealed material information concerning conduct that exceeded the authority granted to local management.

Finally, Vigo's reliance on *Harrison* does not support dismissal. *Harrison* itself cautions that "[a] court should hesitate to dismiss a complaint under Rule 9(b)" where the defendant has been made aware of the particular circumstances for which he must prepare a defense and the claimant has substantial prediscovery evidence supporting those facts. 176 F.3d at 784. Vigo plainly has such notice and CTNA has unquestionably forecast its evidence. Vigo's Motion substantively addresses the severance arrangement, the alleged agreement not to provide the revised agreement to CeramTec GmbH, and the travel expenditures, automobile benefits, and vehicle transactions alleged in the Counterclaims. (*See* Partial MTD at pp. 2–8.)

Rule 9(b) does not require CTNA to prove, before discovery, the full extent of information Vigo allegedly concealed. Under *Corder*, *Harrison*, and *Scharpf*, CTNA's detailed allegations of omission and concealment are sufficient.

**D. Pahach's Involvement Does Not Establish CTNA's Knowledge as a Matter of Law.**

Vigo contends that CTNA cannot establish ignorance because former CTNA President Pahach participated in the severance arrangement and his knowledge must therefore be imputed to CTNA. (*See* Partial MTD at p. 6.) Specifically, Vigo argues that "[h]iring and compensating a direct report fell squarely within the President's role" and dismisses CTNA's allegations that Pahach acted outside his authority as insufficient to invoke the adverse-interest exception. (*Id.*) But that argument asks the Court to accept Vigo's unsupported and self-serving characterization

of Pahach's authority and resolve a fact-dependent issue in his favor at the pleading stage.

The ordinary rule imputing an agent's knowledge to the principal is not absolute. As the Fourth Circuit explained in *Martin Marietta Corp. v. Gould, Inc.*, the rule depends on the very circumstances Vigo's argument assumes away:

> First, when the agent is acting outside the scope of the agency relationship, the legal fiction that the agent and the principal share an identity of interest is destroyed. And second, when the interests of the agent and the principal are adverse, the presumption that an agent will perform his duty and communicate knowledge to his principal no longer exists. Thus, under either theory, knowledge is not imputed from the agent to his principal.

70 F.3d 768, 773 (4th Cir. 1995) (citing 3 Fletcher Cyc. Corp. § 820). Under the adverse-interest exception, the agent must have "totally abandoned the principal's interest" and acted for his own purposes or those of another. *Id.*

Here, CTNA alleges facts that directly challenge Vigo's premise that Pahach was simply exercising ordinary presidential authority. CTNA alleges that Pahach and Vigo knowingly *circumvented* the corporate approval structure establishing, governing and limiting their authority, substantially revised a compensation arrangement without required approval, did so in a manner solely to Vigo's unreasonable benefit and unquestioned detriment to CTNA, and agreed not to disclose the revised agreement to CeramTec GmbH unless specifically requested. (Countercl. at ¶¶ 1–13, 68.) Whether that conduct ultimately establishes that Pahach acted outside the scope of his authority or adversely to CTNA's interests is a question for another stage. It cannot be resolved merely by pointing to Pahach's title as President and declaring his conduct within the scope of his authority.

Vigo's reliance on CeramTec GmbH's status as a separate corporate entity likewise does not resolve the issue. (*See* Partial MTD at pp. 6-7.) Vigo emphasizes that CTNA specifically alleges that CeramTec GmbH's Management Board was kept uninformed and argues that CTNA

therefore cannot claim ignorance of information known to its own President. (*Id.*) But CTNA's allegations concerning CeramTec GmbH are relevant because they describe the governance and approval structure that Vigo and Pahach allegedly circumvented, not because CTNA contends the two companies are the same corporate entity. (Countercl. at ¶¶ 3–14.) The relevant question is whether Pahach acted within the authority CTNA granted him when he participated in the arrangement, not simply whether he held the title of President. *Martin Marietta* forecloses treating that title alone as dispositive where the pleadings allege conduct outside the agency relationship or adverse to the principal's interests.

**E. CTNA Adequately Pleads Constructive Fraud.**

Vigo's challenge to CTNA's constructive-fraud counterclaim fails for substantially the same reasons. Under South Carolina law, constructive fraud requires all the elements of actual fraud except intent. *O'Quinn v. Beach Assocs.*, 249 S.E.2d 734, 738 (S.C. 1978); *see also Crossroads Convenience, LLC v. First Cas. Ins. Grp., Inc.*, No. 1:15-CV-02544-JMC, 2018 WL 2967265, at *7, n.13 (D.S.C. June 13, 2018).

Vigo argues that removing intent does not cure CTNA's alleged failure to plead ignorance, reliance, the right to rely, or injury. (Partial Motion to Dismiss pp. 8-9.) But CTNA pleads those elements. As explained above, the allegations concerning the severance arrangement are themselves sufficient: CTNA alleges that Vigo participated in and benefitted from an unauthorized compensation agreement, failed to disclose material facts concerning that arrangement, CTNA was unaware of those facts and reasonably relied upon Vigo as a fiduciary and executive, and CTNA suffered resulting harm. (Countercl. at ¶¶ 78–86.)

But Vigo's argument suffers from a second, fundamental problem: it artificially confines CTNA's constructive fraud claim to the severance agreement that Vigo initially sued to enforce,

while largely ignoring the broader misconduct alleged in CTNA's Counterclaims. CTNA's Fifth Counterclaim is not so limited. The Fifth Counterclaim incorporates those preceding allegations and alleges, among other things, that Vigo occupied a fiduciary and executive relationship with CTNA; CTNA relied upon him to act honestly and in its interests; Vigo made false or inaccurate representations and material omissions and concealed his participation in unauthorized compensation arrangements, policy violations, and misuse of Company resources; CTNA was unaware of the relevant facts; CTNA reasonably relied upon Vigo; and CTNA suffered resulting financial harm. (Countercl. at ¶¶ 17–35, 78–86.) Vigo cannot define the scope of CTNA's counterclaim by the narrower allegations in his own Complaint. His motion must confront the counterclaim CTNA actually pleaded, including the broader pattern of misconduct incorporated into the Fifth Counterclaim. He cannot obtain dismissal by simply treating those allegations as though they do not exist.

Vigo's Rule 9(b) argument fares no better. Vigo repeatedly faults CTNA for failing to identify an affirmative false statement, but the relevant fraud element is a false representation, not necessarily an affirmative false statement. *Fisher*, 817 F. Supp. 2d at 823 (internal citations omitted). A representation may arise through material omissions or concealment where, as alleged here, Vigo had a duty to disclose. And although Rule 9(b) applies, the Fourth Circuit recognizes that its particularity requirement is "relaxed but not eliminated" where the alleged fraud involves omission or concealment. *Scharpf*, 137 F.4th at 200. CTNA identifies the material information Vigo allegedly concealed, his duty to disclose it, his role in and benefit from the underlying conduct, CTNA's reliance, and the resulting injury. (Countercl. at ¶¶ 17–35, 78–86.) Vigo cannot convert an omission-and-concealment theory into an affirmative-statement requirement simply by repeatedly labeling it as such.

Finally, Vigo's attempt to characterize the Fifth Counterclaim as merely duplicative of CTNA's breach of fiduciary duty Counterclaim does not warrant dismissal. (Partial MTD at p. 9.) The same conduct may support more than one theory of liability, and CTNA has pleaded the elements of constructive fraud. Factual overlap with its fiduciary-duty claim does not make the Fifth Counterclaim deficient under Rules 9(b) or 12(b)(6). CTNA has therefore adequately pleaded its Fifth Counterclaim.

**F. At Minimum, Any Pleading Deficiency Warrants Amendment, Not Dismissal with Prejudice.**

Even if the Court concludes that CTNA has not pleaded some aspect of its fraud or constructive fraud counterclaims with sufficient particularity, dismissal with prejudice would not be warranted. Nothing in Vigo's Partial Motion to Dismiss establishes that CTNA cannot state either claim as a matter of law. Rather, his arguments chiefly concern whether CTNA has provided sufficient factual detail regarding particular representations, omissions, reliance, and resulting injury. (*See generally*, Partial MTD.)

Any such deficiency can be cured by amendment. If the Court determines that Rule 9(b) requires CTNA to plead additional facts concerning any representation, omission, or other aspect of its claims, CTNA should be afforded the opportunity to provide that additional detail. CTNA therefore respectfully requests that, if the Court finds either counterclaim insufficiently pleaded, it grant CTNA leave to amend rather than dismiss the claim with prejudice.

## IV. CONCLUSION

CTNA has adequately pleaded its claims for fraud and constructive fraud. The Counterclaims allege detailed facts concerning Vigo's concealment of the unauthorized severance arrangement, as well as his representations, omissions, and concealment concerning the broader

pattern of misconduct alleged by CTNA. Those allegations, accepted as true, are sufficient to state plausible claims for relief.

Vigo's Partial Motion to Dismiss asks for more. It asks CTNA to prove its allegations, identify evidence that may be developed through discovery, and resolve factual questions concerning corporate knowledge and authority at the pleading stage. Neither Rule 12(b)(6) nor Rule 9(b) requires that showing. And with respect to CTNA's allegations of omission and concealment, *Corder* expressly recognizes that Rule 9(b)'s particularity requirement is relaxed where the relevant facts may be unavailable without discovery.

Accordingly, CTNA respectfully requests that the Court deny Vigo's Partial Motion to Dismiss Defendant's Fourth and Fifth Counterclaims. Alternatively, if the Court determines that either counterclaim requires additional particularity, CTNA respectfully requests leave to amend.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

*/s/ William H. Foster*
William H. Foster, Bar No. 6221
bfoster@littler.com
Katie E. Towery, Bar No. 12861
ktowery@littler.com
110 E. Court Street, Suite 201
Greenville, SC 29601
(864) 775-3190

*Attorneys for Defendant CeramTec North America, LLC*

November 20, 2026